**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JANE DOE, INDIVIDUALLY, AND AS NEXT FRIEND OF MINOR T.W.** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. _____** |
| **DALLAS INDEPENDENT SCHOOL DISTRICT** | § § § § | |
| **Defendant.** | § § § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**COMES NOW,**   Jane Doe, Individually, and as Next Friend of T.W., her minor daughter ("Plaintiff"), and for her causes of action against Defendant Dallas Independent School District ("DISD"), ("Defendant") would show the Court as follows:

**PARTIES**

1.      Plaintiff Jane Doe is the natural mother of T.W., a child who attended Justin F. Kimball High School ("Kimball") during all periods relevant to the facts giving rise to this Complaint. Jane Doe's identity is being made known to the Defendant under separate cover due to the sensitive nature of this matter.

2.      T.W., a minor, and the biological daughter of Plaintiff Jane Doe,  was (14) years of age at the time of the incidents described herein. T.W.'s identity is being made known to the Defendant under separate cover due to the sensitive nature of this matter in

that T.W. was repeatedly sexually assaulted and raped at the Defendant's school during school hours, and that she is still a minor child with severe disabilities that qualify her as "special needs."

3.      Defendant Dallas Independent School District (DISD) is a municipal agency responsible for oversight, rulemaking, compliance with state and federal law, and control of the public primary and secondary schools in Dallas, Dallas County, Texas and receives federal funding. DISD conducts its principal operations at 3700 Ross Avenue, Dallas, Texas 75204-5491. Michael Hinojosa is the Superintendent of Dallas Independent School District and is its registered agent for service of process. Dallas Independent School District may be served with process by serving its Superintendent Michael Hinojosa at his office at the district's headquarters at 3700 Ross Avenue, Dallas, Texas 75204-5491.

## JURISDICTION AND VENUE

4.      Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States.  This civil action arises under 20 U.S.C. § 1681, or "Title IX," and 42 U.S.C. § 1983.

5.      This Court has personal jurisdiction over Defendant Dallas Independent School District.  Defendant Dallas Independent School District is a school district organized under the laws of the State of Texas, conducts its principal operations at 3700 Ross Avenue, Dallas, Texas 75204-5491 which is an address within the jurisdiction of the Northern District of Texas.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district.  Kimball High School where the Plaintiff child, T.W. was repeatedly sexually assaulted, is located in Dallas County, Texas, which is one of the counties over which the Northern District of Texas exercises jurisdiction.

## FACTS GIVING RISE TO THE ACTION

7.      T.W. starting attending Kimball High School ("Kimball") in her 9th grade year in the Fall Semester of 2013 when she was 14 years old.

8.      Prior to attending Kimball, T.W. was diagnosed with severe physical, mental, and learning disabilities as a result of her having Cerebral Palsy and Static Encephalopathy. The Defendant including but not limited to the administration at Kimball was aware of this prior to T.W. starting school at Kimball.

9.      While T.W. was attending Kimball the Defendant prepared a Full and Individual Evaluation of her which reflects that the Defendant was aware that T.W.: "has a history of severe brain damage" , "continues to demonstrate a gross motor delay", "has significant difficulty generalizing many concepts that relate to academic learning. Her overall Adaptive Behavior is in the low range. Her Cerebral Palsy and Static Encephalopathy negatively impacted her Nonverbal ability. This in turn negatively impacted her overall cognitive ability. Her health impairments appear to negatively impact both her academic and adaptive behavior abilities. Based on a review of previous evaluations and information from the ARD committee, [T.W.] continues to exhibit intellectual weakness." Also "her vision is poor and cannot be corrected."

10.     T.W.'s school records also reflect that she "has insufficient mobility skills for safe travel on regular school bus" at the time the sexual assaults were occurring to her at Kimball.

11.     Due to T.W.'s learning disabilities she was considered by DISD to be special needs, qualifying her for special classes including Functional Life Skills ("FLS") and requiring the Defendant to have an educational plan in place for her at all times.

12.     Jane Doe had been informed by T.W.'s school and medical professionals that T.W.'s mental and cognitive development was lagging approximately at least 5 years behind her biological age and Jane Doe had discussed this with administration at Kimball prior to January 2014.  Thus, while T.W. was chronologically 14 years of age at the time of the sexual assaults at Kimball, she mentally and cognitively functioned at the level of a child 9 years of age.

13.      From approximately August 2013 until T.W.'s departure from Kimball, Monica Gray ("Gray") served as her case manager and was charged with administering T.W.'s special needs educational plan.

14.     Starting in the Fall Semester 2013 T.W. and V. A. (whose identity is being known to the Defendant confidentially under separate cover due to the sensitive nature of this matter) were both special needs students in Ms. Jones' FLS classroom at Kimball. V.A. was 20 years of age at the time.

15.     In the very early Fall Semester of 2013, M.E. a young female student at Kimball,  (whose identity is being known to the Defendant under separate cover due to the sensitive nature of this matter and the belief that she is still a minor),  reported being

touched sexually inappropriately by V.A. to Ms. Gilbert, Mr. Water's assistant. Mr.

Waters was Vice Principal at Kimball at all times relevant to the issues in this Complaint.

M.E. did not speak English, and Ms. Gilbert who is fluent in Spanish  reported in an

ARD meeting in September 2013 in which Vice Principal Waters and Gray were in

attendance, that she had been notified of this inappropriate sexual contact by V.A.  After

M.E.'s report of V.A.'s sexual assault  she was placed in a separate classroom from V.A.;

V.A.  was still however permitted to remain in class with T.W.

16.     Later in the Fall of 2013 another student at  Kimball, P. A. (whose identity

is being known to the Defendant confidentially under separate cover due to the sensitive

nature of this matter and the belief that she is still a minor)  and M. E. both reported to

Gray that while they were off campus at a school function at CiCi's Pizza that V.A.

touched them inappropriately on their buttocks. The two girls told Gray that they had

previously reported this inappropriate sexual touching at the time to Ms. Jones, T.W.'s

teacher. Gray wrote up these incidents and turned her reports into Kimball's

administration.

17.     In the Fall 2013, another student at Kimball reported to Gray that V.A.

was making violent threats against him during lunch and that V.A. raised his fist to him

as though V.A. was going to "hit him hard". This student told Gray that he had already

informed Ms. Jones of this and that he was then separated from V.A.  Upon learning of

this incident Gray immediately wrote up this complaint and gave it to Vice Principal

Waters.

18.     In the Fall of 2013 Kimball administration was made aware that due to

V.A.'s prior misbehavior he had not been allowed to attend classes at the Magnet school

since he needed to be closely monitored at all times.

19.     The Administration at Kimball was aware that V.A. also had sexual misbehavior issues at the private school he attended prior to Kimball. The Kimball administration was aware that at the private school, V.A. had to be physically pulled off of girls.

20.     Prior to and on December 3, 2013 V.A. was on a Behavior Plan developed by the Defendant DISD.

21. Prior to December 3, 2013, D. L. another student at Kimball (whose identity is being known to the Defendant confidentially under separate cover due to the sensitive nature of this matter and the belief that he is still a minor)  reported to Gray that V. A. told him that V.A. wanted to "hump" T.W.  Gray immediately wrote this in a report and gave it to Vice Principal Waters.

22.     On December 3, 2013 T.W. reported to Gray, her case manager,  that she did not like it when V.A. was grabbing her buttocks.  Gray observed that T.W. was clearly very visibly upset when she reported these unwelcomed touchings by V.A.

23.     T.W. also reported to Gray on December 3, 2013 that V.A. had touched her multiple times, with the most recent assault occurring that day in the cafeteria when V.A. hugged and kissed her. T.W. told Gray that she had told V.A. to stop touching her but that he would not stop.

24.     T.W. also reported to Gray on December 3, 2013 that  V.A. had tried numerous times to pull her into the bathroom in Ms. Jones' FLS classroom with him and she told him "no".  T.W. told Gray that she had reported this to Ms. Jones shortly after

each of these incidents happened.

25.     Gray immediately reported T.W.'s complaints about V.A to Vice Principal Waters on December 3, 2013, and Gray tried to call Jane Doe at that time to inform her of what T.W. reported. She was unsuccessful in reaching Jane Doe by telephone at that time.  A meeting about T.W.'s complaints was held on December 3, 2013 at Kimball. In attendance were Mr. Waters (assistant principal), Mr. Lee (art teacher), Ms. Jones (FLS teacher), and Ms. Gray (T.W.'s  case manager). Since the school could not reach Jane Doe by telephone that day, she was not able to attend. Gray sent a letter home with T.W. on December 3, 2013 regarding T.W.'s complaints about V.A. sexually touching her. Gray also gave a copy of this letter to Vice Principal Waters and Ms. Jones on December 3, 2013.

26. A subsequent meeting was held on December 5, 2013 regarding V.A.'s assaultive conduct towards T.W.   In attendance at that meeting were Jane Doe and T.W., V.A. and his parents, Vice Principal Waters, and Principal Jones.  During this meeting T.W. reported the various assaults by V.A. at school during school hours, including V.A. trying on multiple occasions to drag her into Mrs. Jones' FLS bathroom, located in the rear of the FLS classroom.  At the time V.A.'s seat was located closer to the front of the room so V.A. was not successful in getting T.W. into the bathroom.  T.W. told everyone during this meeting that she told V.A. "no" when he would grab her buttocks, and when he would try to get her into the bathroom with him.  T.W. also stated at that meeting  that she had reported these incidents to Ms. Jones as they were happening.

27.     During the December 5, 2013 meeting it was discussed that V.A. had been pulled out of Kimball previously because of his behavior problems and had been placed

in a private school. V.A.'s mother commented during the meeting that someone at the private school had said that they needed to "get him a lady" referring to a prostitute, due to his behavior there.

28.    During the December 5, 2013 meeting Vice Principal Waters read aloud from reports by Gray where she had told him that a student at Kimball had reported to Gray that V.A. wanted to "hump" T.W.    V.A. did not deny this.

29.    Immediately after the December 5, 2013 meeting Gray, who was not permitted by school administrators to be in the meeting asked Jane Doe if the administration had reported to her in the meeting all the other complaints that they had received about V.A.'s behavior towards other children. Jane Doe replied that she had not been told about these other incidents.  Gray told Jane Doe that she had written up several complaints from students about V.A. being sexually assaultive towards them and that Gray had provided the reports to Vice Principal Waters.

30.    After the December 5, 2013 meeting regarding V.A.'s inappropriate sexual touchings of T.W., Kimball's administrators relocated V.A.'s  seat within Ms. Jones' FLS classroom.   Administrators moved V.A.'s seat to the very rear of the classroom directly behind a half, directly in front of the restroom.

31.    While V.A.'s new seat moved V.A. a short distance away from T.W. during class, his new seat location was *immediately in front of the door to the restroom* located in the rear of Ms. Jones' classroom. This relocation of V.A. was made despite the fact that T.W. had previously complained to the administration in the December 5, 2013 meeting that V.A. was always trying to pull her into that restroom.  Jane Doe was not

informed by the school, nor did she know from any other source at that time, that V.A.'s seat was relocated.

32.     All the students in Ms. Jones' FLS class, including T.W., were required to use the restroom located in the rear of Mrs. Jones' classroom, which V.A. was now sitting directly in front of.

33.     Kimball's administrator's decision to relocate V.A.'s seat directly in front of the restroom in response to T.W.'s complaints about V.A.'s inappropriate sexual touching of her, resulted in T.W. having to walk directly past V.A. every time that she needed to use the restroom.

34.     After V.A.'s seat was relocated directly in front of the restroom, he continued to touch and grab T.W.'s buttocks as she walked by him to use the restroom.

35.     The restroom in Ms. Jones' classroom contained a cot where Gray had previously found V.A. asleep during regular class hours.

36.     There was a lock and a key to this restroom but according to Gray it was almost always kept unlocked during school hours.

37.     Sometime during the last week of January 2014, while T.W. was in Ms. Jones' FLS classroom, she needed to use the restroom. Ms. Jones was not in her classroom at the time. Ms. Jones was attending another student's ARD meeting that day. Instead two aides, Ms. Comacho and Ms. Cruse were in T.W.'s classroom. Ms. Comacho at that time was a "one on one" aide for a particular special needs student in that class, and therefore was not supervising V.A. or T.W. This was despite the fact that the Defendant District's policy at the time required **2 teachers** to be present at all times in

the FLS classroom.

38.     On that day in January 2014, T.W. had to walk directly by V.A. to use the restroom in Ms. Jones classroom. Immediately after T.W. entered the restroom, V.A followed directly behind her into the restroom, and forced her to take his penis into her mouth and then violently raped T.W.

39.     During the various sexual assaults and the rape T.W. repeatedly told V.A. "No" and "Stop".

40.     T.W. outcried a couple weeks later on February 12, 2014 to her mother Jane Doe that V.A. had raped her in the FLS restroom during class. T.W. told the police that V.A. got visibly angry with T.W. during the rape when she told him no and stop, and that she was very afraid of him.   T.W. reported to the police in her outcry tape that the rape was "painful",  "hurtful" and "upset" her.

41.     When Jane Doe learned of T.W.'s rape by V.A. she immediately reported it to the administration at Kimball, and the police and CPS were called.

42.     On February 13, 2014 there was a meeting at Kimball to discuss V.A.'s rape of Jane Doe. In attendance were Jane Doe and her husband, T.W., Vice Principal Waters, and Principal Jones. Jane Doe requested that Gray, T.W.'s case manager, be allowed to attend the meeting, but that request was denied.  During the meeting T.W. described the details of the rape. Principal Jones and Vice Principal Waters took Jane Doe and her husband to show them the location where the rape occurred.  While the school administrators and Jane Doe and her husband were in Ms. Jones classroom, Ms. Jones came out of the restroom in her classroom where the rape had occurred. Ms. Jones

showed Jane Doe and her husband the seat directly in front of the restroom, behind the half wall, where V.A.'s seat had been moved after the December 5, 2013 meeting concerning T.W.'s complaints about V.A.'s sexually inappropriate behavior.

43.     Principal Jones and Vice Principal Waters told Jane Doe and her husband that day that they would be investigating the rape and assured them of T.W.'s safety, but Jane Doe was never given any information regarding their investigation.

44.     After the rape, Jane Doe took T.W. to the ER at Children's Hospital, and they sent her to the REACH clinic where she was examined and tested extensively and invasively due to the rape. The medical records confirm that there was evidence of sexual penetration.

45.     Over the next couple of weeks Kimball school personnel, as well as officials from Texas Department of Family and Protective Services (CPS), extensively questioned T.W. at school about the rape by V.A. without her parents' permission or knowledge.

46.     Ms. Camacho**,** one of the aides present in T.W.'s classroom when the rape occurred, pulled T.W. aside when she was at school after the outcry and tried to convince T.W. that the rape never happened.

47.     Contrary to what Jane Doe had been told by the school, she learned that V.A. had not been expelled from school nor any other action taken to ensure that he had no further contact with T.W.  Fearing for her daughter's safety Jane Doe held T.W.out of school starting March 6, 2014, while she repeatedly called Defendant DISD headquarters requesting that T.W.be transferred to another school.

48.     Jane Doe did not allow T.W. to attend Kimball because V.A. was still being allowed to attend classes there. She was getting no response from the Defendant to her requests to move her daughter to another school. In the meantime, as a result of her daughter being held out of school for her own safety, Jane Doe received notification that she was being charged with the crime of truancy.

49.     Jane Doe had to appear in Court at a truancy hearing and explain to a Judge why she had withheld her daughter from attending school at Kimball.

50.     Due to the Defendant's failure to take action to remove V.A. from Kimball, T.W. was forced to eventually transfer to a new school. T.W. had fallen behind in her studies due to time missed because of the Defendant's inaction. T.W. was also forced to leave her school, friends, and teachers, and relocate. As a special needs student this sudden change of environment under these circumstances was extremely difficult and disruptive. She never received any tutoring or counseling from the school to compensate for these losses.

51.     T.W.'s school records in 2015, reflect that after the rape she was struggling with her grades, receiving unsatisfactory in the subjects of writing, science, and social studies/history, and did not meet the statewide assessment performance standard for science and social studies/history.

52.     Plaintiff's forensic psychologist will testify that T.W. has sustained lifelong psychological damages from V.A. sexually assaulting and raping her for which she will need extensive lifelong therapy.  In addition to physical pain, suffering  and bodily injury, T.W. has suffered from emotional harm and mental anguish, and likely will

continue to suffer from same in the future, as a direct result of Defendant's actions described herein. Further T.W. has had a loss of educational benefits as a direct result of the Defendant's actions described herein.

53.     **A**s a direct result of Defendant's actions Jane Doe sustained a variety of damages as described herein.

## CAUSES OF ACTION

### 20 U.S.C. § 1681—
### STATUTORY RIGHT TO EDUCATIONAL OPPORTUNITIES AND BENEFITS AGAINST DEFENDANT DALLAS ISD

54.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 53 of this Complaint.

55.     Defendant Dallas ISD is a recipient of federal funds.

56.     T.W. was assaulted by her attacker V.A. on the basis of the child's sex.

57.     The sexual assault was so severe, pervasive, and objectively offensive that it barred the child's access to the educational opportunities and benefits offered by Dallas ISD.

58.     Principal Jones and Vice Principal Waters, officials of Dallas ISD, had the authority to take corrective action to end the assaults committed by V.A. upon T.W.and to act upon the T.W.'s  reports of the assaults.

59.     Principal Jones and Vice Principal Waters had actual knowledge of the assaults of T.W. and other young female students at their school while the assaults were ongoing by virtue of complaints made to Ms. Jones (T.W.'s teacher and case manager), complaints that Gray received from several students and documented in reports to the

administration, as well as complaints made directly by T.W. to Principal Jones and Vice Principal Waters in the December 5, 2013 meeting.

60.     Principal Jones and Vice Principal Water's actual knowledge of the assaults is functionally equivalent to Dallas ISD's actual knowledge.

61.     Principal Jones and Vice Principal Waters acted with deliberate indifference to the known sexual assaults by V.A. by :

> (a)     failing to take any action to end the sexual assaults by V.A. who was  under their control and authority after having many complaints about his sexual behavior towards T.W. and others;
>
> (b)     taking affirmative action that clearly endangered T.W. by relocating V.A.'s seat directly in front of the restroom in Ms. Jones classroom after T.W. had complained to the administrators that V.A. was trying to drag her into the restroom;
>
> (c)     attempting to cover up the sexual assaults by V.A. of T.W. by acquiescing in the teacher's aide  Comacho's  attempted coercion of T.W. into stating that the rape in the restroom never occurred;
>
> (d)     failing to take any disciplinary measures against V.A. after the reports of the assaults in December 2013, or even after they were  notified of the rape by V.A. of T.W. on February 13, 2014;
>
> e)     failing to insure T.W.'s education was not impacted due to the assaults;

f)       failing to insure T.W.'s safety at school in light of complaints of

sexually inappropriate behavior by V.A. to T.A. and others, and in light of

known prior sexually inappropriate behavior by V.A.

62.     Principal Jones and Vice Principal Waters' deliberate indifference to the

assaults amounted to an official decision not to remedy the outrageous and continuous

assaultive behavior of V.A. towards T.W. and others.

63.     Principal Jones and Vice Principal Waters deliberate indifference to the

assaults is functionally equivalent to Dallas ISD's deliberate indifference.

64.     Principal Jones and Vice Principal Waters and, thus Dallas   ISD's,

deliberate indifference to the brutal assaults that T.W. suffered deprived her of access to

the educational opportunities and benefits provided by Dallas  ISD to which T.W. was

entitled in violation of 20 U.S.C. § 1681.

**42 U.S.C. § 1983—**
**DUE PROCESS RIGHT TO BODILY INTEGRITY**
**AGAINST DEFENDANT, DALLAS ISD**

65.     Plaintiff realleges and incorporates by reference herein all of the

allegations contained within paragraphs 1 through 64 of this Complaint.

66.     T.W. has a liberty interest in her bodily integrity that is protected by the

Due Process Clause of the Fourteenth Amendment to the United States Constitution.

67.     V.A.'s assaults of T.W. violated T.W.'s Due Process right to bodily

integrity.

68.     Principal Jones and Vice Principal Waters had actual knowledge of the

repeated assaults by V.A. on T.W. prior to her being raped by V.A.  Principal Jones and

Vice Principal Waters also had actual knowledge of the likelihood that V.A.'s assaults on T.W. would continue and likely escalate without their intervention.

69.     Principal Jones and Vice Principal Waters' actual knowledge of the likelihood of continuous assaults by V.A. on T.W. was confirmed when they received complaints from Gray, T.W.'s teacher and case manager, and when they were personally told of the assaults by T.W. during the December 5, 2013 meeting.

70.     Principal Jones and Vice Principal Waters demonstrated deliberate indifference towards T.W.—that is, knew of and disregarded an excessive risk to the child's health and safety—by failing to take action that was obviously necessary to prevent or stop the ongoing and continuous assaults.

71.     Principal Jones and Vice Principal Waters' failure to take action that was obviously necessary to prevent or stop the assaults was a violation of T.W.'s Due Process right to bodily integrity.

72.     Defendant Dallas  ISD, by and through its Superintendent Michael Hinojosa, as policymaker, is liable for the wrongful conduct of  Principal Jones and Vice Principal Waters because Dallas ISD practiced a policy and/or had a custom of inadequately training or failing to train their employees to respond to sexual assaults on students—a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by other students, teachers, and/or intruders are commonplace in the DFW-area schools—a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults,  Dallas ISD, was on notice that training in this particular area was deficient and likely to cause injury.  That

failure to train or inadequate training caused the violations of T.W.'s constitutionally-protected right to bodily integrity. As a direct and proximate result of Defendant Dallas ISD's violation of T.W.'s right to bodily integrity, T.W. has suffered the harm and damages described above.

73.     Defendant Dallas  ISD, by and through its Superintendent Michael Hinojosa, as policymaker, is liable for the wrongful conduct of  Principal Jones and Vice Principal Waters because Dallas ISD practiced a policy and/or had a custom of not having the required 2 teachers in the FLS classroom at all times. The custom and practice of the violation of this school policy was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by other students, teachers, and/or intruders are commonplace in the DFW-area schools (particularly with special needs children) —a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults,  Dallas ISD, was on notice that supervision, including the required 2 teachers for the FLS class was imperative and any deficiency would likely cause injury.   The failure to enforce the 2 teacher requirement caused the violations of T.W.'s  constitutionally-protected right to bodily integrity. As a direct and proximate result of Defendant Dallas ISD's violation of T.W.'s right to bodily integrity, T.W. has suffered the harm and damages described above.

## 42 U.S.C. § 1983—
## DUE PROCESS RIGHT TO CONTROL CHILD'S UPBRINGING
## AGAINST DEFENDANT DALLAS ISD

74.     Plaintiff realleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 73 of this Complaint.

75.     Jane Doe, T.W.'s mother, has a liberty interest in controlling T.W.'s upbringing and directing her education that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

76.     Dallas ISD, violated Jane Doe's Due Process right to control T.W.'s upbringing when they acquiesced in the teacher's aide Comacho's efforts to try and coerce T.W. into saying that the rape did not occur. This exponentially increased the physical and psychological risks and damages to T.W. stemming from the rape.

77.     Dallas ISD, through its Superintendent Michael Hinojosa as policymaker, is liable for the wrongful conduct of Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of inadequately training or failing to train their employees to respond to reports by students of sexual assault—a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools—a fact evidenced by, among other things, by the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that training in this particular area was deficient and likely to cause injury.   That failure to train or inadequate training caused the violation of Jane Doe's constitutionally-protected parental rights. As a direct and proximate result of Defendant Dallas ISD's  violations of Jane Doe's right to control the upbringing of her daughter, T.W. has suffered the harm and damages described above.

78.     Dallas ISD, through its Superintendent Michael Hinojosa as policymaker, is liable for the wrongful conduct of Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of failing to have the required 2 teachers in the

FLS classroom - the failure of such policy or custom was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools (particularly to children of special needs) —a fact evidenced by, among other things, by the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that a practice of violating such requirement was a deficiency that would likely cause injury. That failure to abide by the 2 teacher requirement caused the violation of Jane Doe's constitutionally-protected parental rights. As a direct and proximate result of Defendant Dallas ISD's violations of Jane Doe's right to control the upbringing of her daughter, T.W. has suffered the harm and damages described above.

### 42 U.S.C. § 1983—
### DUE PROCESS RIGHT TO FAMILIAL ASSOCIATION
### AGAINST DEFENDANT DALLAS ISD

79.      Plaintiff realleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 78 of this Complaint.

80.      Jane Doe has a liberty interest in familial association and in the society and companionship of her child that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

81.      V.A., the attacker, violated Jane Doe's Due Process right to familial association when he sexually assaulted T.W.

82.      The mental and emotional harm T.W. suffered as a result of the assaults interfered with the child's ability to maintain an emotional bond with her mother, thereby depriving Jane Doe of the society and companionship of T.W.

83.     Further, Dallas ISD, by and through teacher's aide  Comacho violated Jane Doe's Due Process right to familial association when it attempted to coerce T.W. into saying that the rape did not occur.

84.     Dallas ISD, through Principal Jones and Vice Principal Waters's interference with Mrs. Doe's right to familial association was arbitrary, capricious, and willful.

85.     Dallas ISD,  through its Superintendent Michael Hinojosa as policymaker, is liable for the wrongful conduct of Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of inadequately training or failing to train their employees to respond to reports by students of sexual assault—a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools—a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that training in this particular area was deficient and likely to cause injury.   That failure to train or inadequate training caused the violation of Jane Doe's  constitutionally-protected right to familial association. As a direct and proximate result of Defendant Dallas ISD's violations of Jane Doe's right to familial association Jane Doe and T.W. have suffered the harm and damages described above.

86.     Dallas ISD,  through its Superintendent Michael Hinojosa as policymaker, is liable for the wrongful conduct of Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of violating the 2 teacher requirement in the FLS

classroom – a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools (particularly to special needs children) —a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that adhering to this requirement was imperative and any deficiency would likely cause injury. That practice of failure to adhere to the 2 teacher requirement in the FLS classroom caused the violation of Jane Doe's  constitutionally-protected right to familial association. As a direct and proximate result of Defendant Dallas ISD's violations of Jane Doe's right to familial association Jane Doe and T.W. have suffered the harm and damages described above.

## 42 U.S.C. § 1983—
## RETALIATION FOR EXERCISE OF FIRST-AMENDMENT RIGHTS
## AGAINST DEFENDANT DALLAS ISD

**87.**    Plaintiff realleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 86 of this Complaint.

88.    T.W.'s report that she had been sexually assaulted in the bathroom of Kimball High School concerned an important matter of public concern and was, accordingly, protected by the First Amendment to the United States Constitution.

89.    After the child reported that she had been sexually assaulted, Dallas ISD by and through teacher's aide  Comacho retaliated against her by attempting to cover up the rape by trying to coerce this child with severe disabilities that had just been brutally sexually assaulted into saying that "nothing happened" to her.

90.     Dallas ISD, by and through teacher's aide  Comacho so intimidated the child that she ceased engaging in her constitutionally-protected right to comment upon matters of public concern: she would not even initially tell the representative from Texas Department of Family and Protective Services (CPS) what really happened.

91.     Dallas ISD's actions, by and through teacher's aide  Comacho were motivated entirely against the child's exercise of her constitutionally-protected right to speak out about the attack she had suffered.

92.      Dallas ISD, through Superintendent Michael Hinojosa  as policymaker, is liable for the wrongful conduct of  Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of inadequately training or failing to train their employees to respond to reports by students of sexual assault—a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools—a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that training in this particular area was deficient and likely to cause injury.   That failure to train or inadequate training caused the violations to T.W. and to T.W.'s constitutionally-protected right of expression. As a result of Defendant  Dallas ISD's actions, T.W. has suffered the harm and damages described above.

93. Dallas ISD, through Superintendent Michael Hinojosa  as policymaker, is liable for the wrongful conduct of  Principal Jones and Vice Principal Waters because they practiced a policy or had a custom of violating school regulations that required 2

teachers always in the FLS classroom—a policy or custom that was deliberately indifferent to the fact, known by school district officials, that sexual assaults of students on or around school grounds by teachers, other students, or intruders are commonplace in DFW-area schools (particularly to special needs children) —a fact evidenced by, among other things, the dozens of newspaper accounts and reported cases describing such assaults. Because of these frequent assaults, Dallas ISD was on notice that violation of the 2 teacher requirement in FLS classes was deficiency that would likely cause injury. That failure to have the required 2 teachers in the FLS classroom resulted in violations to T.W.'s constitutionally-protected right of expression. As a result of Defendant  Dallas ISD's actions, T.W. has suffered the harm and damages described above.

**42 U.S.C. § 1983—**
**STATE CREATED DANGER**
**AGAINST DEFENDANT DALLAS ISD**

94.     Plaintiff realleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 93 of this Complaint.

95.     Plaintiff asserts that the Defendant is liable to Plaintiff by virtue of a state-created danger under 42 U.S.C. § 1983 since the Defendant took specific affirmative acts which placed T.W.in imminent danger from V.A. and directly resulted in severe harm to her which otherwise would not have occurred.

96.     Plaintiff can establish that Defendant used its authority to create a dangerous environment for the Plaintiff and acted with deliberate indifference to the plight of the Plaintiff. Defendant was put on notice by complaints by T.W. and other young students at Kimball that V.A. was a sexual predator and was sexually touching and grabbing female students, including but not limited to T.W.   In the school meeting that

was conducted on December 5, 2013 T.W. informed  Principal Jones and Vice Principal Waters of various sexual assaults that V.A. had committed on her including trying to drag her into the bathroom in Ms. Jones' classroom while he was inappropriately sexually touching her. After being informed of this, instead of completely separating V.A. and T.W.,  the Defendant took affirmative actions that were clearly outrageous and unreasonable by relocating V.A.'s seat in T.W.'s classroom *directly in front of the bathroom that T.W. was required to use* and that she had previously informed the school administrators that V.A. had tried to drag her into. Defendant's  affirmative action of relocating V.A.'s seat to directly in front of the bathroom put T.W.at significant risk of serious immediate and proximate harm and resulted within a very short time of her being raped in that bathroom by V.A. during class. The risk of T.W. being sexually assaulted by V.A. in that bathroom was obvious and known to the Defendant  prior to the Defendant taking the affirmative action of moving V.A.'s seat directly in front of the bathroom. But for the very close proximity of V.A.'s seat to the bathroom V.A. would not have had the opportunity to get T.W. into the bathroom in order to rape her there. Defendant acted extremely reckless in conscious disregard of the risk in relocating V.A.'s seat in front of the bathroom, with the knowledge that they had regarding the various sexual complaints about V.A. including specific information relating to V.A.'s previous sexual assaults on T.W.

97.    The Defendant specifically created the danger of T.W. being raped by V.A. in that restroom, by relocating V.A.'s seat directly in front of that restroom behind a half wall, after it was on clear notice from multiple sources that V.A. had sexually assaulted T.W. and others and that V.A. was tried to drag T.W. into that very restroom.

## STATE CLAIMS  -

98.     Plaintiff realleges and incorporates by reference herein all of the allegations contained within paragraphs 1 through 97 of this Complaint.

99.     Defendant's conduct at the time and on the occasions in question constituted intentional infliction of emotional distress upon T.W. by forcing her to endure a rape of a student during school hours, on school grounds, by a student with a known history and prior complaints by T.W. and others of being a sexual predator.

100.     Defendant was negligent in failing to provide adequate supervision to maintain a safe learning environment for T.W. at an institution that she was required by law to attend.

101.     Defendant, at the time and on the occasions in question, acted with heedless and reckless disregard for the safety and welfare of Jane Doe, which disregard was the result of deliberate indifference to the rights, welfare, and safety, of T.W. in violation of the laws of the State of Texas, and the United States, and thereby was grossly negligent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

a) that process be issued requiring the Defendant to answer this Complaint within the time required by law;

b) that Plaintiff be awarded damages that will fully compensate Plaintiff and T.W. for all injuries caused by Defendant's actions in     violation of the United States Constitution and federal law, including but not limited to all actual and punitive damages;

c) that Plaintiff be awarded attorneys' fees authorized under 42 U.S.C. §1988 for

Defendant's violations of 42 U.S.C. § 1983; and as  authorized under 20 U.S.C. §1681;

d) for a jury to hear and render judgment on those causes of action so triable; and

e) all other relief to which Jane Doe and T.W. are entitled.

Respectfully submitted,


/s/ *Lori Watson*
Lori Watson
Texas State Bar No. 00791889
**LORI WATSON, PLLC**

Hal M. Browne
Texas State Bar No. 03213500
**LAW OFFICES OF HAL BROWNE, PLLC**

2713 Black Sage Drive, Suite 100
Plano, Texas 75090
(972) 612-2593 – Telephone
(469) 375-5395 – Facsimile
Lori@loriwatsonlawfirm.com
halbrowne@hotmail.com


**ATTORNEYS FOR PLAINTIFF**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
         Plaintiff

☐ 3   Federal Question
         *(U.S. Government Not a Party)*

☐ 2   U.S. Government
         Defendant

☐ 4   Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
         Proceeding

☐ 2   Removed from
         State Court

☐ 3   Remanded from
         Appellate Court

☐ 4   Reinstated or
         Reopened

☐ 5   Transferred from
         Another District
         *(specify)*

☐ 6   Multidistrict
         Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____